UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARL JEROME WILLIAMS,

    Plaintiff,

v.                                            Case No: 8:17-cv-321-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Carl Jerome Williams, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability on April 24, 2015. (Tr. 20.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 94, 112, 118.) Plaintiff then requested an administrative hearing. (Tr. 123.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 40–84.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 20.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a complaint with

this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B.      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning on February 1, 2015. (Tr. 211.) Plaintiff has a high school education. (Tr. 250.) Plaintiff's past relevant work experience included work as security guard and customer service clerk. (*Id*.) Plaintiff alleged disability due to heart problems, uncontrolled high blood pressure, post-traumatic stress disorder ("PTSD"), depression, and anxiety. (Tr. 249.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since February 1, 2015, the alleged onset date. (Tr. 22.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: mild degenerative spondylosis and osseous encroachment of the C5-C6 foramen, moderate acromioclavicular arthrosis, patellar spurring in the right knee, mild coronary artery disease, angina, hypertension, hyperlipidemia, major depression, PTSD, and moderate alcohol use disorder. (*Id*.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with additional limitations. (Tr. 24.) Specifically, the ALJ found the following RFC:

> [Plaintiff] can only occasionally push/pull with the bilateral upper extremities, as well as only occasionally operate foot controls with the bilateral lower extremities. The claimant can never climb ladders, ropes, or scaffolds and never crawl. He can occasionally climb ramps and stairs and occasionally stoop, kneel, and crouch. The claimant can frequently balance. He can occasionally reach overhead with the right upper extremity. The claimant can frequently handle and finger with the left upper extremity. He is limited to jobs that can be performed while using a handheld assistive device required for prolonged ambulation or ambulation across uneven

> terrain, and the contralateral upper extremity can be used to lift and carry up to the exertional limit. The claimant must avoid concentrated exposure to extreme temperatures and excessive vibration. He must avoid all exposure to hazardous machinery and unprotected heights. The claimant is further limited to simple, routine, repetitive tasks in a low-stress job (defined as having only occasional decision making, only occasional changes in the work setting, and only occasional social interaction with the general public and coworkers after the completion of the orientation/training period).

(*Id*.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 25.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 31.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a garment sorter, copy machine operator, and small parts assembler. (Tr. 32.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 33.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to take into account the social interaction during job orientation in the hypothetical to the VE; and (2) the ALJ failed to properly assess the opinion evidence. For the reasons that follow, neither of these contentions warrant reversal.

**A.     Hypothetical to the VE**

Plaintiff contends that the ALJ erred in his hypothetical to the VE. (Dkt. 20 at 12.) Specifically, Plaintiff argues that the ALJ's hypothetical failed to take into consideration the social interaction required by Plaintiff during job orientation or training. (*Id.*) Plaintiff asserts that "it is likely that during a training period, the employee is likely to have greater levels of interaction due to the need for some training, not less interaction, during training/orientation." (Dkt. 20 at 14.) Plaintiff further argues that if Plaintiff's mental impairments would preclude the ability to complete orientation or training, then Plaintiff "would most likely be terminated." (*Id.*)

As part of his RFC determination, the ALJ limited Plaintiff to simple, routine, and repetitive tasks in a low-stress job, which was defined as requiring only occasional decision-making, changes in the work setting, and social interaction with the general public and coworkers "after the completion of the orientation/training period." (Tr. 24.) During the hearing, the ALJ posed a series of hypothetical questions to the VE consisting of the limitations posed in Plaintiff's RFC. (Tr. 74–77.) However, in the hypothetical question regarding light work, the ALJ only included a limitation for occasional interaction with coworkers for the period of time after orientation and did not include a limitation for occasional interaction with the general public. (Tr. 74.)

When the ALJ determines that a claimant cannot perform past relevant work, then the Commissioner must produce evidence that claimant is able to do other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a [vocational expert]." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). A vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question to the vocational expert "which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227.

Plaintiff's argument that an employee "is likely" to have more human interaction during orientation or a training period (Dkt. 20 at 14) is speculative. However, the ALJ did not include all components of Plaintiff's RFC in his hypothetical question regarding light work to the VE. Specifically, the ALJ did not include a limitation for occasional interaction with the general public

after the completion of orientation or a training period. (Tr. 72–77.) The VE testified that an individual with the limitations identified in the ALJ's hypothetical is able to perform light work as a garment sorter, small parts assembler, and copy machine operator. (Tr. 74–77.) The VE further testified that the orientation period for the jobs of garment sorter and copy machine operator would be a brief demonstration up to a maximum of thirty days. (Tr. 74–75.)

The Commissioner argues that the jobs identified by the VE do not exceed the ALJ's RFC finding of no more than occasional social interaction with the general public after the completion of orientation or a training period. The Court agrees. Indeed, the three jobs identified by the VE do not require interaction with the general public. According to the Dictionary of Occupational Titles ("DOT"), taking instructions and helping are "not significant" and talking and hearing are "not present" in performing jobs as a garment sorter and copy machine operator, while performing a job as a small parts assembler includes the additional requirement of hearing "occasionally," or up to one-third of the time. DICOT § 222.687-014, 1991 WL 672131; DICOT § 207.685-014, 1991 WL 671745; DICOT § 706.684-022, 1991 WL 679050. Nor does the DOT indicate that the three jobs require more human interaction during orientation or a training period. *Id*. Thus, any error in the ALJ's hypothetical to the VE is harmless and does not warrant remand. Whether Plaintiff is able to interact with the general public after, or during, orientation or a training period is not relevant to his performance of the jobs the VE testified Plaintiff can perform. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision). Plaintiff failed to prove that he cannot perform the jobs identified by the ALJ. *See Jones* 190 F.3d at 1228 ("If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove [he] is unable to perform those jobs in order to be found disabled.") Accordingly, Plaintiff's contention does not warrant reversal.

B.  **Opinion Evidence**

Plaintiff next contends that the ALJ erred in evaluating the opinion evidence. (Dkt. 20 at 15.) Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of consulting physicians Dr. Samuel Dicorte and Dr. Richard Belsham. (*Id.*)

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," state agency consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683,

689 (11th Cir. 2013) ("The ALJ also must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source."). Further, the "opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

1. Dr. Dicorte

Plaintiff argues that the ALJ erred in rejecting Dr. Dicorte's opinion and failed to address Dr. Dicorte's positive examination findings that support his opinion. (Dkt. 20 at 17.) Plaintiff further contends that the ALJ "selectively culled only the normal findings and did not address why the positive examination findings did not support the opinion." (Dkt. 20 at 18.)

As noted by the ALJ, Dr. Dicorte performed a consultative examination of Plaintiff on March 8, 2016. (Tr. 27, 1189.) In his physical examination, Dr. Dicorte reported that Plaintiff had elevated blood pressure, a left posterior lower thigh lipoma, left distal lateral femur surgical scar, and no significant lower extremity edema. (Tr. 1192.) Dr. Dicorte further noted the straight leg raise testing from a sitting position was positive at thirty degrees on the right leg and positive at forty-five degrees on the left leg secondary to leg and back pain. (*Id*.) There was no obvious paravertebral muscle spasm. (*Id*.) Plaintiff was unable to walk on his toes and used a cane for assistance getting on and off the examination table. (*Id*.) Dr. Dicorte further noted that Plaintiff was able to stand on one foot without assistance bilaterally, but unable to hop on one foot with assistance bilaterally. (*Id*.) Plaintiff's muscle strength was five out of five. (*Id*.) Dr. Dicorte further reported that Plaintiff achieved tandem walking with difficulty, had an antalgic gait favoring the right leg, and used a cane. (Tr. 1193.) However, Plaintiff was able to ambulate forty

to fifty feet without the cane. (*Id*.) Plaintiff also had decreased lumbar forward flexion, extension, and lateral flexion. (Tr. 1196.) In his medical source statement, Dr. Dicorte opined that Plaintiff could never carry over twenty-one pounds, lift over fifty pounds, and could only sit for four hours at a time, stand for two hours at a time, and walk for thirty minutes in an eight-hour workday. (Tr. 1199–1200.) Dr. Dicorte further found that Plaintiff required a cane and could only ambulate forty to fifty feet without the use of a cane, but can carry small objects while using the cane. (Tr. 1200.) Dr. Dicorte also opined that Plaintiff can occasionally reach, push and pull, and use foot controls and frequently handle, finger, and feel. (Tr. 1201.)

In his decision, the ALJ considered the opinion of Dr. Dicorte and assigned it little weight. (Tr. 30.) The ALJ noted that while Plaintiff used a cane for ambulation and exhibited an antalgic gait, he was able to walk for forty to fifty feet without the use of a cane. (Tr. 27.) The ALJ further noted that Plaintiff's strength remained at five out of five, his range of motion was intact everywhere except his lumbar spine, and his reflexes and sensory findings were intact. (*Id*.) In affording Dr. Dicorte's opinion little weight, the ALJ reasoned that the opinion focused mostly on Plaintiff's allegations without considering the entire period at issue and the collateral evidence. (Tr. 30.) The ALJ again noted Plaintiff's range of motion and strength and further reasoned that Plaintiff exhibited intact sensation and no atrophy during Dr. Dicorte's examination. (*Id*.) The ALJ concluded that "[i]t makes little sense then to opine the claimant could sit and stand/walk for intervals of less than six hours in an eight-hour workday." (*Id*.)

The ALJ properly evaluated Dr. Dicorte's opinion. First, Dr. Dicorte was a consultative examiner and, as such, his opinions are not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners

they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–61 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."). Second, the ALJ discredited Dr. Dicorte's opinion because his own physical examination did not support the limitations he afforded to Plaintiff's ability to sit, stand, and walk. (Tr. 30.) Although he was not required to do so, the ALJ adequately articulated good cause to discredit Dr. Dicorte's opinion, namely that the evidence did not support his opinion. *See Winschel*, 631 F.3d at 1179; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rejecting application of the "good cause" standard because the opinion at issue was made by a physician who "saw [claimant] only one time").

Plaintiff challenges the ALJ's finding that Dr. Dicorte's opinion was based on Plaintiff's subjective complaints by pointing to Dr. Dicorte's findings as described in his physical examination. (Dkt. 21 at 13–14.) However, a review of the evidence demonstrates that the ALJ's decision to afford Dr. Dicorte's opinion little weight is supported by substantial evidence. Specifically, as the ALJ reasoned (Tr. 30), Dr. Dicorte's physical examination report shows that Plaintiff exhibited fairly normal range of motion, five out of five muscular strength, no atrophy, and intact sensation. (Tr. 1191–98.) Further, the ALJ noted that the opinion of state agency consultant Dr. Debra Troiano contrasts with Dr. Dicorte's opinion. Dr. Troiano opined that Plaintiff was capable of a reduced range of medium work. (Tr. 104–07.) Thus, the ALJ considered Dr. Dicorte's opinion, stated that he afforded the opinion little weight, and provided ample reasoning for doing so. (Tr. 27, 30.) Accordingly, Plaintiff's contention concerning Dr. Dicorte's opinion does not warrant reversal.

## 2. Dr. Belsham

Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of consulting physician Dr. Belsham. (Dkt. 20 at 19.) On March 7, 2016, Dr. Belsham performed a psychological evaluation of Plaintiff. (Tr. 1181–87.) Dr. Belsham noted that Plaintiff had been diagnosed with major depressive disorder, PTSD with panic attacks, and unspecified alcohol related disorder. (Tr. 1183.) In his medical source statement, Dr. Belsham concluded that Plaintiff would have moderate to marked limitations in his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (Tr. 1185.) Dr. Belsham further opined that Plaintiff would have moderate to marked limitations in his ability to interact with the public and supervisors and to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 1186.)

The ALJ discussed Dr. Belsham's findings and afforded his opinion little weight. (Tr. 28, 30.) Specifically, the ALJ did not agree with Dr. Belsham's assessment of Plaintiff's difficulties with interacting with the public, coworkers, and supervisors and his difficulties in responding to usual work situations and changes in a routine work setting. (Tr. 30.) The ALJ reasoned that Dr. Belsham premised his opinion in large part on Plaintiff's subjective complaints rather than his own observations or Plaintiff's medical records. (*Id.*) The ALJ further cited to records from Plaintiff's treating psychologist Dr. Brook Hay in which Dr. Hay noted few mental health deficits upon examination. (Tr. 30, 940, 977, 1224–27, 1231.)

Similar to Dr. Dicorte, Dr. Belsham was not a treating physician, but instead evaluated Plaintiff on referral as part of his application for benefits. Thus, Dr. Belsham's opinions were not entitled to deference by the ALJ. *McSwain*, 814 F.2d at 619 (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not

treating physicians"); *Crawford*, 363 F.3d at 1160–61 ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Accordingly, although the ALJ was required to "state with particularity the weight given to [Dr. Belsham's] and the reasons therefor," *Winschel*, 631 F.3d at 1179, because Dr. Belsham was not a treating physician, the ALJ was not required to articulate good cause for affording his opinion little weight. *See Gibson*, 779 F.2d at 623 (rejecting application of the "good cause" standard because the opinion at issue was made by a physician who "saw [claimant] only one time"). Here, the ALJ considered Dr. Belsham's opinion, stated that he afforded the opinion little weight, and provided his reasoning for doing so. (Tr. 28, 30.) Accordingly, Plaintiff's contention concerning Dr. Belsham's opinion does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 21, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record